# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Rosalina Crespo AGUNDES,<br><br>         Plaintiff,<br><br>v.<br><br>Nancy A. BERRYHILL, Acting Commissioner of Social Security,<br><br>         Defendant. | Case No.: 16-cv-1505-BEN-AGS<br><br>**REPORT AND RECOMMENDATION ON SUMMARY JUDGMENT MOTIONS (ECF Nos. 16 & 20)** |

  A judge denied plaintiff's Social Security benefits application, finding plaintiff could still work as a kitchen helper, room attendant, or packer. But plaintiff can't read or write, and these jobs typically require basic literacy. In this situation, a judge must "definitively explain" how plaintiff's illiteracy impacts the chosen jobs. The judge gave no explanation here, so the case must be remanded for that analysis.

## **BACKGROUND**

  Plaintiff Rosalina Agundes suffers from degenerative disc disease, diabetes, high blood pressure, and obesity. (AR 21.) At her disability hearing, a key issue concerned her English literacy. Although she was born and raised in the United States, she testified—through an interpreter—that she obtained her GED in Spanish and read "very little" English. (AR 49-51, 57, 165.) On her Disability Report, she stated that she could not "read

and understand English," and could not "write more than [her] name in English." (AR 183.) According to her medical records, during an emergency room visit an "interpreter was needed to translate instructions and medications." (AR 24, 284.) Finally, she submitted a handwritten Work History Report in English (AR 200-06), but no one inquired whether anyone helped her with it. In a block labeled, "Name of person completing this form if other than the disabled person," she wrote her own name, apparently misunderstanding the instruction. (*See* AR 206.)

Based on this evidence, the Administrative Law Judge asked a vocational expert whether there were "jobs in the state or national economy" for someone with Agundes's limitations, including being "illiterate in English" and with a "GED in Spanish." (AR 62-63.) The expert identified three such representative jobs from the Department of Labor's *Dictionary of Occupational Titles*: kitchen helper, linen room attendant, and packer. (AR 63-64.) Although basic literacy is required for each of those occupations under the *Dictionary*—and the question explicitly presumed the job applicant was "illiterate in English"—the expert testified that an applicant like Agundes could do each of those jobs. (AR 62-64.) The ALJ "determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles," adopted that testimony, deemed Agundes able to work, and denied her application. (AR 28.)

## **DISCUSSION**

Although Agundes appeals on several grounds, this Court need only address her dispositive complaint: the failure to explain how an illiterate could perform the reading and writing demands of the three identified occupations. (ECF No. 16-1, at 7.)

**A.     Agundes's Illiteracy**

This Court takes Agundes's illiteracy as a given because the ALJ presumed at the hearing that the claimant was "illiterate in English" (AR 62), and the Commissioner conceded that the ALJ found her illiterate. (*See, e.g.*, ECF No. 20-1, at 3 ("The ALJ accepted [Agundes's] testimony" that she was "illiterate in English," but concluded that, "though illiterate, Plaintiff was 'able to communicate in English.'" (citations omitted)); *see*

*also Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 227 (9th Cir. 1988) ("[S]tatements of fact contained in a brief *may* be considered admissions of the party[.]").[1]

**B.     Impact of Illiteracy on the Representative Jobs Agundes Might Perform**

In analyzing a claimant's ability to work, ALJs often reference the Department of Labor's *Dictionary of Occupational Titles*, which defines the requirements for about 13,000 different jobs. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 446 (2d Cir. 2012) (per curiam). An underlying assumption of the *Dictionary* is that "basic literacy . . . is essential *for every job in the economy*[.]" *Donahue v. Barnhart*, 279 F.3d 441, 445 (7th Cir. 2002) (citations omitted). Thus, according to the *Dictionary*, an illiterate person would not qualify for *any* occupation. But this does not mean that illiterate claimants are "per se disabled." *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001). It simply means that when an ALJ "rel[ies] on a job description in the Dictionary of Occupational Titles," the ALJ must "definitively explain" the impact of the claimant's illiteracy "on her ability to find and perform a similar job." *Id.* (citation omitted).

In concluding that Agundes could work, the ALJ relied on three jobs from the *Dictionary*, but did not explain the impact of illiteracy on them. (AR 27-28.) The ALJ simply stated that her conclusion was "[b]ased on the testimony of the vocational expert." (AR 28.) But the expert offered no analysis. He merely testified that someone like Agundes—that is, someone "illiterate in English" and with similar physical limitations—could work in those three occupations. (AR 63-64.) The expert may be right. Perhaps Agundes can do those jobs, despite her illiteracy. But someone had to "definitively explain"

---

[1] The ALJ never explicitly mentioned Agundes's illiteracy in the written decision, so it could certainly be argued that the ALJ implicitly found Agundes to be literate. If so, the failure to make an express finding on this disputed issue—and to support it with explicit reasons—would alone be reversible error. *See Silveira v. Apfel*, 204 F.3d 1257, 1261-62, 1262 n. 15 (9th Cir. 2000) (per curiam) (finding reversible error when the "ALJ made no express finding that [the claimant] was literate in English, and there is insufficient evidence in the record" to support such a finding; for example, "none of the forms filled out in English was clearly filled out by [the claimant] without assistance").

3

how the ALJ and the expert arrived at that conclusion. "[M]eaningful judicial review" is impossible when the entire "assessment takes place in the vocational expert's head." *Pinto*, 249 F.3d at 847 (citation and alterations omitted). Thus, the case must be remanded so this analysis can be made explicit.

## CONCLUSION

This Court recommends that Agundes's summary judgment motion (ECF No. 16) be **GRANTED**, defendant's cross-motion for summary judgment (ECF No. 20) be **DENIED**, and the case be remanded so the ALJ can make specific findings on Agundes's language capabilities and the impact they have on her ability to work. The parties must file any objections to this report by August 28, 2017. *See* Fed. R. Civ. P. 72(b)(2). A party may respond to any such objection within 14 days of being served with it. *Id*.

Dated: August 14, 2017

Hon. Andrew G. Schopler
United States Magistrate Judge

4

16-cv-1505-BEN-AGS